UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. 6:21-cv-01395-PGB-DCI

MARSHAL KIRCHIK,

    Plaintiff,

v.

CANTRUST REAL ESTATE ENTERPRISE, LLC, a Florida limited liability company d/b/a THE LAUREL MOBILE HOME PARK, CHUNG LOU, an individual, and MIAO CHU LOU, an individual,

    Defendants.

_____/

## AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, MARSHAL KIRCHIK, ("KIRCHIK"), by and through his undersigned attorney, files this, his Amended Complaint for Damages against CANTRUST REAL ESTATE ENTERPRISE, LLC d/b/a THE LAUREL MOBILE HOME PARK (hereinafter, "CANTRUST"), CHUNG LOU, an individual and MIAO CHU LOU, an individual, and states as follows:

### INTRODUCTION

1. This is an action by Plaintiff to recover unpaid minimum wage and overtime compensation under the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et. seq,* (hereinafter "FLSA"); and, minimum wages under the Florida Minimum Wage Amendment ("FMWA"), Article X, §24 of the Florida Constitution.

1

## JURISDICTION

2. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §§1331 and 1367.

3. At all times pertinent to this Complaint, the corporate Defendant operated as an enterprise engaged in operating a mobile home park.

4. CANTRUST was an enterprise engaged in interstate commerce. At all times pertinent to this Complaint, the Defendants regularly owned and operated a business enterprise engaged in commerce or in the production of goods for commerce as defined in §3(r) and 3(s) of the FLSA, 29 U.S.C. §203(r) and 203(s).

5. The corporate Defendant operated a mobile home park in Lake Wales, Florida known as "The Laurel Mobile Home Park," located at 18721 U.S. Highway 27, Lake Wales, FL 33853.

6. Plaintiff's work at the Defendants' mobile home park involved handling on a regular and recurrent basis "goods" or "materials," as defined by the FLSA, which were used commercially in Defendants' business, and moved in interstate commerce. These materials included office supplies, telephones, tools, electronic equipment, paper, and other materials necessary for the operation of a mobile home park. These materials were manufactured outside the State of Florida.

7. During all relevant time periods, the Defendants employed at least two employees, inclusive of the Plaintiff, who were "engaged in commerce or in the production of goods for commerce," or "had employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by

any person," as defined in 29 U.S.C. §203(s)(1)(A)(i). These materials also included office supplies, telephones, tools, electronic equipment, paper, and other materials necessary for the operation of a mobile home park. These materials were manufactured outside the State of Florida.

8. Upon information and belief, during the period of the Plaintiff's employment, the Defendants' enterprise had an annual gross volume of sales made or business done of at least five hundred thousand dollars in accordance with §203(s)(1)(A)(ii).

9. In addition to the foregoing, Plaintiff is entitled to the protections of the FLSA as he was "individually covered" by that statute. During his employment, and as set forth below, he was required to use instrumentalities of interstate commerce on a regular and recurrent basis. The Plaintiff used instrumentalities of interstate commerce, including the telephone on a regular and recurrent basis each week to assist in the operating of the Defendants' mobile home park. Approximately five (5) to ten (10) times per week, during each week of the Plaintiff's employment, he spoke on a telephone with prospective and actual guests who contacted the mobile home park from outside the State of Florida and resided outside of Florida, and were travelling to, or planning travel to, Defendants' mobile home park for a stay or visit.

10. The Defendants are subject to the jurisdiction of this Court because they engage in substantial and not isolated activity within the Middle District of Florida.

11. The Defendants are also subject to the jurisdiction of this Court because they operate, conduct, engage in, and/or carry-on business in the Middle District of Florida.

## VENUE

12. The venue of this Court over this controversy is based upon the following:

   a.   The unlawful employment practices alleged below occurred and/or were committed in the Middle District of Florida, and

   b.   Defendants were and continue to be a corporation and individuals doing business within this judicial district.

## PARTIES

13. At all times material hereto, Plaintiff, was a resident of Polk County, Florida, and was an "employee" of the Defendants within the meaning of the FLSA.

14. At all times material hereto, the Defendants were conducting business in Polk County, Florida.

15. Despite diligent search and inquiry, the Plaintiff has been unable to locate the individual Defendants or the corporate Defendant.

16. The Plaintiff has hired an investigator to locate the individual Defendants, and perform a diligent search and inquiry to discover the residence of the individual Defendants, including but not limited to, telephone listings, directory assistance search, internet people finder search, voter registration search, nationwide Masterfile death search, tax collector/assessor records, department of motor vehicle records, driver's licenses search, department of corrections search, federal prison search, regulatory or occupational license search, last known employment search, Orange County jail search, and a utilities company search.

17. Upon information and belief, based on diligent efforts to locate Defendants CHUNG LOU and MIAO CHU LOU, the individual Defendants are not residents of Florida.

18. Defendants CHUNG LOU and MIAO CHU LOU appear to be concealing their whereabouts and/or do not reside in the state of Florida. The residence of CHUNG LOU and MIAO CHU LOU is unknown to the Plaintiff.

19. The ages of CHUNG LOU and MIAO CHU LOU are unknown to the Plaintiff.

20. The Plaintiff hired an investigator to locate the corporate Defendant and perform a diligent search and inquiry to discover the true name, domicile, and principal place of business, and status of the corporate Defendant CANTRUST.

21. According to the Florida's Division of Corporations' website, CANTRUST is an active Florida limited liability company with its principal place of business listed as 6050 Hoffner Ave, Orlando, Florida, although the location of the mobile home park is in Lake Wales, Florida.

22. According to the Florida's Division of Corporations' website, Defendant MIAO CHU LOU is listed as CANTRUST's registered agent and a manager and her address also is listed as 6050 Hoffner Ave, Orlando, Florida. The Plaintiff, through an investigator, has performed a diligent search to locate the registered agent and all persons upon whom service of process would bind the corporate Defendant, but their whereabout are unknown to the Plaintiff and they appear to be concealing their whereabouts.

23. Based on attempts to served Defendants at 6050 Hoffner Ave, Orlando, Florida, none of the Defendants can be found at that address.

24. Defendants MIAO CHU LOU and CHUNG LOU are listed as the only officers of CANTRUST, but the Plaintiff is unable to locate the whereabouts of any of those officers or any current other officers, directors general managers, cashiers, resident agents, or business agents of CANTRUST. The aforementioned individuals cannot be found within the state of Florida or are otherwise concealing themselves.

25. Despite attempts to do so, the Plaintiff has been unable to personally serve Defendant CANTRUST at the address listed in Florida's Division of Corporations or through a diligent effort to find an alternate address.

26. Counsel for the Plaintiff also contacted a former general manager CANTRUST named James Wynn (who oversaw Plaintiff's work when Plaintiff was previously employed), who stated he was unaware of the whereabouts of the individual Defendants.

27. At all times material hereto, the Defendants were the employers of the Plaintiff.

28. At all times material hereto, Defendants were and continue to be "employer[s]" within the meaning of the FLSA, the Florida Minimum Wage Amendment (FMWA), Article X, §24 of the Florida Constitution.

29. At all times material hereto, Defendants failed to pay Plaintiff wages in conformance with the FLSA and the FMWA.

30. Defendants committed a willful, malicious, and unlawful violation of the FLSA and, therefore, are liable for monetary damages.

31. At all times material hereto, CANTRUST was an "enterprise engaged in commerce" within the meaning of the FLSA.

32. At all times material hereto, the work performed by Plaintiff was directly essential to the business performed by Defendants.

33. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

STATEMENT OF FACTS

34. From about September 1, 2017 through or about July 5, 2021, the Plaintiff, KIRCHIK was employed by the Defendants to operate their mobile home park in Lake Wales, Florida, known as "The Laurel Mobile Home Park."

35. The Defendants' mobile home park is frequently contacted by out-of-state residents seeking to make a reservation.  Because Plaintiff, KIRCHIK handled the telephone as part of operating Defendants' mobile home park business, the Plaintiff frequently would speak to mobile home park guests (or prospective guests) who were physically outside the State of Florida, regarding mobile home park business.

36. Both Plaintiff's managers, Shirley Chen and James Wynn told the Plaintiff he was required to live on the Defendants' mobile home park property to perform work tasks.

37. During his employment with the Defendants, Plaintiff lived in his private mobile home, located on a "pad" on the Defendants' mobile home park.

38. Plaintiff KIRCHIK was told by a manager, James Wynn, that as part of his job duties, Plaintiff would need to pick up trash, fix water pipes, do lawn maintenance, cut bushes and trees, and make repairs.

39. Plaintiff KIRCHIK was also told by another manager, Shirley Chen, that as part of his job duties, he would need to collect rent from guests, handle new tenants checking in, evicting tenants, securing operating licenses for the Laurel Mobile Home Park and obtaining a self-inking rubber stamp with his name appearing as the Resident Manager of the Laurel Mobile Home Park.

40. Manager Wynn also told the Plaintiff would be responsible for security of the mobile home park, 24-hours per day, and that between the hours after about 10:00 p.m. and 6:00 a.m., Plaintiff should do three (3) patrols around the property to prevent fires, fighting, trespassing, theft and water leaks.  Plaintiff performed security patrols throughout his employment.

41. Because the Defendants required the Plaintiff to be available to park guests 24-hours per day, and to provide security all day and night, the Plaintiff's lodging on the Defendants' property was for the convenience of the Defendants, not the Plaintiff.

42. While employed at the Defendants' mobile home park, the Plaintiff was required to respond to any problems or guest issues, anytime, day or night, including guest drug overdoses, fighting, dog bites, and criminal activity.  Plaintiff would have to confront and eject trespassers off the property at all times of day and night.  In addition to performing the tasks assigned to him throughout the morning, day and nighttime as aforesaid, while employed the Plaintiff also performed a variety of services, including but

not limited to, hospitality, checking guests in/out, collecting payments, maintenance, painting, fixing fences, filling potholes, doing repairs, reservations, clerical work, answering the phones, switching water well pumps on and off, and dealing with a variety of guest issues at all times of day and night.

43. While employed at the Defendants' mobile home park, the Plaintiff would run errands for the Defendants throughout the week, to such places as, for example, Home Depot, Lowe's, the courthouse, the garbage landfill, bank, hardware store, and the health department.

44. The Plaintiff would sometimes need to meet with manager James Wynn to deliver the mobile home park's earnings.

45. The Plaintiff worked for the Defendants approximately nine (9) hours per day, seven (7) days per week. The Plaintiff's workday usually began around 7:00 a.m. (assuming it was not earlier, if there had been criminal activity or other incidents at the mobile home park in the middle of the night) where he would go around the park, begin collecting rents, enforce park rules as needed, pick up trash, talk to guests, and address illegal parking. The Plaintiff would thereafter begin performing the aforesaid duties throughout the workday including, security, maintenance, check-in/out, property and guest issues.

46. The bulk of Plaintiff's work was performed between 7:00 a.m. and 3:00 p.m., however, the Plaintiff continued performing all his duties throughout the rest of the day and into the following morning (doing early-morning security patrols). The Plaintiff

generally worked, on average, about 63 hours per week performing the duties and tasks described above.

47. Rather than pay the Plaintiff any wages for his work, the Plaintiff was told he simply did not have to pay for the small "pad," on top which his privately-owned mobile home was parked. The Plaintiff was told by managers James Wynn and Shirley Chen that eventually, when the subject mobile home park was sold, Plaintiff would receive part of the sale proceeds to pay for the work Plaintiff had performed. The Plaintiff never received compensation or any sales proceeds for the work he performed, however.

48. During Plaintiff, KIRCHIK's employment, the Defendants paid him no wages. Thus, the Defendants failed to pay Plaintiff at or above the applicable minimum wage for him hours worked.

49. The applicable hourly Florida minimum wage was: (1) $8.10 in 2017; (2) $8.25 in 2018; (3) $8.46 in 2019; (4) $8.56 in 2020; and (5) $8.65 in 2021. The Plaintiff is entitled to the hourly minimum wage for each of his approximate 63 hours of work per week.

50. Upon information and belief, the rent amount for the pad on which the Plaintiff parked his mobile home exceeded the actual or reasonable cost to Defendants CANTRUST for furnishing the lot to the Plaintiff, and such amount included a profit for Defendants.

51. Defendants failed to pay the Plaintiff any wages "free and clear."

52. Even though Plaintiff, KIRCHIK worked in excess of forty hours per week, Defendants failed to pay him at the rate of time-and-one-half times the applicable minimum wage.

53. The Defendants failed to keep records in full compliance with the FLSA's recordkeeping requirements, with respect to the Plaintiff's employment, his lodging or use of the Defendant's facilities.

54. Defendant, CHUNG LOU was a supervisor and manager/owner who was/is involved in the day-to-day operations of the Defendant companies, and was directly responsible for the oversight of Plaintiff.  Therefore, he is personally liable for the FLSA and FMWA violations.

55. Defendant, CHUNG LOU was directly involved in decisions affecting employee compensation and/or hours worked by Plaintiff, KIRCHIK.

56. Defendant, MIAO CHU LOU was a supervisor and manager/owner who was/is involved in the day-to-day operations of the Defendant companies, and was directly responsible for the oversight of Plaintiff.  Therefore, she is personally liable for the FLSA and FMWA violations.

57. Defendant, MIAO CHU LOU was directly involved in decisions affecting employee compensation and/or hours worked by Plaintiff, KIRCHIK.

58. Plaintiff has retained Bober & Bober, P.A. to represent him in this litigation and has agreed to pay the firm a reasonable fee for its services

<u>STATEMENT OF CLAIM:</u>

COUNT I

<u>VIOLATION OF 29 U.S.C. § 206 (UNPAID MINIMUM WAGES)</u>

59. Plaintiff KIRCHIK realleges Paragraphs 1 through 58 of this Complaint as if fully set forth herein.

60. Plaintiff, KIRCHIK's employment with Defendants was to consist of a normal workweek for which he was to be compensated at or above the FLSA minimum wage.

61. 29 U.S.C. § 206 and requires that any employee covered by the FLSA be paid his minimum wages.

62. During Plaintiff, KIRCHIK's employment, Defendants paid him less than the statutory minimum wage for all of his work hours.

63. The Defendants acted willfully and maliciously in failing to pay proper minimum wages to the Plaintiff.

64. As a direct and proximate result of Defendants' willful violation of the FLSA, Plaintiff is entitled to liquidated damages pursuant to the FLSA.

WHEREFORE, Plaintiff respectfully requests:

a. judgment in his favor for all unpaid minimum wages due;

b. liquidated damages;

c. attorneys' fees and costs pursuant to the FLSA;

d. post-judgment interest; and

e. all other and further relief this Court deems to be just and proper.

## COUNT II

## VIOLATION OF ARTICLE X, § 24, FLORIDA CONSTITUTION

65. Plaintiff, KIRCHIK, realleges Paragraphs 1 through 58 as if fully stated herein.

66. Pursuant to Article X, Section 24 of the Florida Constitution, Defendants were required to pay Plaintiff, KIRCHIK, at least the applicable Florida minimum wage.

67. During Plaintiff, KIRCHIK's employment, Defendants paid him less than the statutory minimum wage for all of his work hours.

68. The Defendants acted willfully and maliciously in paying Plaintiff below the minimum wage.

WHEREFORE, Plaintiff KIRCHIK respectfully requests that judgment be entered in his favor against the Defendants:

    a.    Declaring that Defendants violated Article X of the Florida Constitution, insofar as failing to pay Plaintiff at or above the minimum wage;

    b.    Awarding Plaintiff all back wages due and owing in the amount calculated above;

    c.    Awarding Plaintiff liquidated damages in the amount equal to his back wages;

    d.    Awarding Plaintiff reasonable attorney's fees and costs and expenses of this litigation pursuant to Article X, Sec. 24, Fla. Const.;

    e.    Awarding Plaintiff post-judgment interest; and,

    f.    Awarding such other and further relief this Court deems to be just and proper.

## COUNT III

### VIOLATION OF 29 U.S.C. § 207 (UNPAID OVERTIME)

69. Plaintiff, KIRCHIK realleges Paragraphs 1 through 58 as if fully stated herein.

70. Since Plaintiff, KIRCHIK's date of hire with Defendants, in addition to Plaintiff's normal regular work week, the Plaintiff worked additional hours in excess of

forty (40) per week for which he was not compensated at the statutory rate of time and one-half.

71. Plaintiff KIRCHIK was entitled to be paid at the rate of time and one-half for his hours worked in excess of the maximum hours provided for in the FLSA.

72. Defendants failed to pay KIRCHIK overtime compensation in the lawful amount for hours worked by him in excess of the maximum hours provided for in the FLSA.

73. As set forth above, the Plaintiff, KIRCHIK worked about 23 hours of *overtime* (hours in excess of 40) per week throughout his employment.  The Plaintiff is entitled to 1.5 times the applicable minimum wage rate for each overtime hour.

74. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff, KIRCHIK, at the statutory rate of time and one-half for the hours worked in excess of forty (40) hours per week when it knew or should have known such was due.  Defendants also failed to properly disclose or apprise KIRCHIK of his rights under the FLSA.

75. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff, KIRCHIK, is entitled to liquidated damages pursuant to the FLSA.

76. Due to the willful, malicious and unlawful acts of Defendants, Plaintiff, KIRCHIK has suffered damages in the amount not presently ascertainable of unpaid overtime wages, plus an equal amount as liquidated damages, his reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, KIRCHIK, respectfully requests that judgment be entered in his favor against the Defendants:

a. Declaring that the Defendants have violated the maximum hour provisions of 29 U.S.C. § 207;

b. Awarding Plaintiff overtime compensation in the amount calculated;

c. Awarding Plaintiff liquidated damages;

d. Awarding Plaintiff reasonable attorney's fees and costs and expenses of this litigation pursuant to 29 U.S.C. § 216(b);

e. Awarding Plaintiff post-judgment interest; and

f. Ordering any other and further relief this Court deems to be just.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as of right by jury.

> Respectfully submitted,
> BOBER & BOBER, P.A.
> Attorneys for Plaintiff
> 2699 Stirling Road
> Suite A-304
> Hollywood, FL 33312
> Phone: (954) 922-2298
> Fax: (954) 922-5455
> peter@boberlaw.com
>
> By:  /s/.Peter Bober
>      FBN: 0122955